## CHESTER COUNTY.

JANUARY TERM, 1884, No. 113.                    FEBRUARY 12, 1884.

# Spackman's Appeal.

1. An uncle and niece had been living together for a number of years in a house belonging to the uncle, he paying all the expenses, and she having charge of the household. At his request, she bought the house and lot from him for cash; at which time he said to her, "I will expect a home there as long as I live, and I will pay all expenses as I have been doing." After her uncle's death, the niece claimed from his estate rent for the use and occupation of the house and lot. *Held*, that although the parties were related, the subject of the claim is not one which comes within the prohibited class requiring an express contract and positive proof.

2. It was not error for the auditor to find that there was a contract to pay for the use of the house and lot as a part of the expenses which the decedent agreed to pay as an entirety.

3. The mere relationship of uncle and niece would not suffice to rebut the presumption of an implied contract in view of all the circumstances of the case.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of Norris Spackman, Lee Spackman, Hulda Spackman, executrix of George Spackman, deceased, Jane Spackman, Rachel Jones, Rachel A. Powell, George James, Rachel Pennypacker, and Mary Conrad, from the decree of Orphans' Court of *Chester County*, confirming the auditor's report upon the distribution of the balance shown by the account of Robert F. Hoopes, administrator of Isaac Spackman, deceased.

From the testimony, the auditor, Alfred P. Reid, Esq., found, *inter alia*, the following facts:

Isaac Spackman was a bachelor, residing, at the time

of his death, at the Grove, in West Whiteland township, on a small property owned by Malinda Thompson. He had resided there since 1864. His household consisted of himself, his nieces, Malinda Thompson and Jane Spackman, and a grand niece, Jennie Spackman, a daughter of Lee Spackman. He managed the little property on which he lived, maintained the family, and received the income of the lot. Before 1864, he owned and carried on a farm in the same township. He was about eighty-two years of age when he died, May 12, 1882.

Malinda Thompson presents two claims : one is for services rendered to Isaac Spackman for the six years prior to his death at four dollars per week, and the other for rent for the use and occupation of her property for six years at $100 per year. Prior to 1855, Mrs. Thompson and her husband occupied part of Isaac Spackman's house on his farm. Her husband then left her, and they have not lived together since. She had two children, boy and girl, aged twelve and fifteen. Isaac Spackman then took Mrs. Thompson and her children into his family, consisting of himself, his sister, and sister-in-law ; the two latter died more than twenty years ago. Mrs. Thompson had resided with Isaac and had charge of his household ever since. Her age now is seventy-six. Her daughter remained in the family until her marriage, and her son until he went to his trade. She had no property when taken in by Isaac. No accounts were kept either by Isaac or her, and no settlements or money paid her during all this time ; the only business transaction that appears to have taken place between them was in 1866. Isaac then owned the property at the Grove, where he was then living, and where he died. Malinda Thompson's father had died shortly before that date. Isaac said to her, " Would you like to buy this property?" (meaning the property on which they were living.) She said she "had no money to buy it with." Isaac said, " Will you give me the money you get from your father's estate if I make you a deed for the property?" To which she replied that she would. Isaac further said to her, " I will expect a home there as long as I live, and I will pay all expenses as I have been doing." Mrs. Thompson detailed this transaction to the administrator, Mr. Hoopes, since Isaac's death, and said further that "nothing else had ever been said about any contract between them."

On May 19, 1866, Isaac made her a deed for the property. They lived on just as before.

In 1875 Mrs. Thompson was somewhat afflicted with

rheumatism, rendering her less active and able to perform the household duties than before, during the remaining years of Isaac's life. She, however, did the baking, sewing, helped in some of the household duties, had general charge of the household affairs, administered to him his medicine, and nursed and bandaged his limbs when they needed attention, and attended faithfully upon him and his household.

The auditor reported, *inter alia*, as follows :

"The rental value of the property from the evidence is $100 per annum. The consideration named in the deed is $1,500. Before that time, Isaac had supplied the residence. He got her money, she got the property, which furnished them a home henceforward. He kept the house and maintained the family as before. He managed the property and got the proceeds. The law will presume an agreement to pay for its use and occupation ; his own words would lead to the same conclusion. He desired to occupy it the rest of his days and to pay all expenses, as he had been doing. If he kept up his home, as he desired to do, and occupied some one's property other than his own, the rent would be a necessary part of the expense. He proposed using her property for that purpose, and must necessarily have contemplated paying for its use. Justice and equity require it also. He got her money and had the use of it ever since. He had occupied, with his family, her property, which he gave her for the money ; he should, therefore, pay her for its use. She will, therefore, be allowed $100 per year rent for six years, with interest from the end of each year, making $720, with interest from the date of his death to this time, making $774."

The remaining distributees filed an exception to the award to Malinda Thompson of six years' rent, at $100 per annum, with interest, or $774, which exception was subsequently dismissed by the Court, and the report confirmed.

The remaining distributees then took an appeal and assigned as error the dismissal of the exception and the confirmation of the report.

*D. Smith Talbot* and *William M. Hayes* for appellants.

The finding of an auditor, approved by the court below, will not prevent this court from doing justice to the parties on an appeal : Miller's Appeal, 40 Leg. Int., 475.

There was no evidence of any payment on account nor demand for payment ; no receipts and no conversations

in relation to the rent claimed. Decedent conveyed the property to appellee for half its value upon the condition that he should have a home there as long as he lived. The bill originally presented to the administrator was for services only, and contained no claim for rent, showing that this claim was an after-thought.

*Washington Townsend* for appellee.

In Miller's Appeal, 40 Leg. Int., 475, the finding of the auditor was reversed because he had disregarded the evidence: See Fahnestock's Appeal, 14 W. N. C., 50; Mengas' Appeal, 7 Harris, 221.

There was a contract for rent fairly deducible from the facts. Relationship alone does not overcome the presumption that a promise to pay is intended for services rendered, except in the case of parent and child: Smith *v.* Milligan, 7 Wr., 107; Gordner *v.* Heffley, 13 Wr., 163; Schoch *v.* Garrett, 19 P. F. Sm., 144; Russell's Est., 7 Phila., 64; Estate McCarty, 9 *Id.*, 318.

The implied contract for the payment of rent is a much stronger case than where the claim is for personal services.

February 25, 1884, the opinion of the Court was delivered by GREEN, J.:

The claim of the appellee in this case, which was allowed by the auditor, was not a claim for personal services, or for boarding against the estate of the decedent, and hence is not necessarily within the rule which requires direct proof of an express contract. It is a claim for rent of a house belonging to the appellee, and which was occupied by the decedent for a number of years before his death. The relationship between the parties was that of uncle and niece. The latter purchased the property from the former for a stipulated price, which was paid in money, and from that time on the niece was the owner of the premises. Prior to that date, the uncle had lived with the niece in the same house, and had paid all the expenses, and furnished the house and ground attached in addition. In 1866, at his request, she bought the house and lot from him at the price fixed by himself—$700—which she paid him in money. When this was done, he said to her, "I will expect a home there as long as I live, and I will pay all expenses as I have been doing." There was no contract that he was to have the right, absolutely, to live in the house during the rest of his life as a part of the consideration of the sale. This would be a charge on the property if it had been agreed upon in proper form, al-

most equivalent to an estate for his own life in the land. But there was no such agreement. The expression that he would expect a home there does not necessarily import anything more than a desire on his part to continue living with his niece as he had been doing, he to pay all the expenses. As to one part of the expenses, the relation of the parties was changed. Up to the time of the deed he had provided the house and lot at his own expense. After that time she provided them at her expense. She had parted with her own money in order to enable herself to do this, and thereby deprived herself of the income from the money which she paid to her uncle for the property. That income she lost and he gained, and in that respect he did not continue to pay all the expense as he had been doing, and as he agreed to do in the future, unless he paid her an equivalent in money for the use and occupation of the house. This he did not do, and the present claim is founded upon the theory of a legal obligation to make compensation for the use and occupation of the premises for the six years preceding his death. We think in view of the circumstances that the conclusion of the auditor that there was a liability for the use of the premises is correct. The mere fact of the use and occupation would, as between strangers, create an implied liability. Here, while the parties were not strangers, they were not closely related, and the subject of the claim is not one which comes within the prohibited class requiring an express contract and positive proof. On the contrary, there was sufficient in the spoken words which passed between the parties to carry the case to a jury had there been a common law action on the question of a contract relation. The auditor has found, practically, that there was a contract to pay for the use of the house and lot as a part of the expenses which the decedent agreed to pay as an entirety. We cannot say there was error in this, or in the conclusion that the mere relationship of uncle and niece would not suffice to rebut the presumption of an implied contract in view of all the circumstances of the case. The action of the court below was a concurrence in the findings of the auditor, both in fact and law, and we are not disposed to interfere with them.

Decree affirmed at the costs of the appellants.